UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RENEE KEMP,

          Plaintiff,

    v.

WELLS FARGO BANK, N.A., et al.,

          Defendants.

Case No. 17-cv-01259-MEJ

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 17

## INTRODUCTION

Wells Fargo Bank, N.A. ("Wells Fargo") and HSBC Bank USA, N.A. ("HSBC") (collectively, "Defendants") have filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Mot., Dkt. No. 17. Plaintiff Renee Kemp filed an Opposition (Dkt. No. 23) and Defendants filed a Reply (Dkt. No. 26). The Court previously found this matter suitable for disposition without oral argument and vacated the hearing. *See* Dkt. No. 28. Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** Defendants' Motion for the following reasons.

## BACKGROUND

In 2003, Plaintiff purchased real property located at 6055 Grizzly Peak Boulevard, Oakland, California 94611 (the "Property"). First Am. Compl. ("FAC") ¶¶ 8-9, Dkt. No. 15. To purchase the Property, Plaintiff obtained a first-lien loan secured by a Deed of Trust in favor of Greenpoint Mortgage Funding, Inc. *Id.* ¶ 33. The first-lien loan was in the amount of $540,000. *Id.* On or about April 2006, another loan was obtained under Plaintiff's name, increasing the balance of Plaintiff's loan to $810,000. *Id.* ¶ 34. Plaintiff has no recollection of executing those loan documents, and alleges they are a product of forgery and fraud. *Id.* ¶ 35.

On or about April 2, 2007, another Promissory Note and Deed of Trust was executed on Plaintiff's behalf, increasing her loan balance to $850,000. *Id.* ¶ 36; *see* Request for Judicial Notice ("RJN"), Ex. A (Initial Interest Note), Dkt. No. 18-1. A Deed of Trust of real property located at 6055 Grizzly Peak Boulevard, Oakland, California 94611, recorded on April 9, 2007, secured the note. *See* FAC ¶ 5; *see also* RJN, Ex. B (Deed of Trust dated April 2, 2007). At that point, the borrowed amount was more than the amount owed on Plaintiff's loan. FAC ¶ 36. Plaintiff did not receive a line of credit from the financing or cash out of the financing agreement. *Id.* ¶ 37. Plaintiff alleges the loan balance was a product of forgery and fraud by Plaintiff's lender, who intended to profit from an inflated principal balance at Plaintiff's expense. *Id.* The increased principal balance, in conjunction with a high interest rate, caused Plaintiff's payments to become unmanageable and resulted in Plaintiff seeking a loan modification. *Id.* ¶ 39. A Corporate Assignment of Deed of Trust recorded on February 22, 2012 assigned a beneficial interest in the Deed of Trust to HSBC Bank, as trustee for the Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2007-7. *Id.* ¶ 11; *see* RJN, Ex. C.

In the summer of 2015, Plaintiff applied for a loan modification with Wells Fargo. FAC ¶ 12. Plaintiff inquired about the status of her loan modification on June 27, 2015 (*id.* ¶ 13), and provided a Wells Fargo representative with more documents upon request (*id.* ¶ 19). Wells Fargo changed Plaintiff's single point of contact ("SPOC") mid-review, and Plaintiff was unable to reach her new SPOC despite the fact a foreclosure sale of the Property had been scheduled. *Id.* ¶¶ 16-17. Although Plaintiff complied with Wells Fargo's request for more documents, "all of a sudden, Wells Fargo would not confirm postponement of the foreclosure sale, despite Plaintiff's compliance with the directions provided by [a Wells Fargo Employee]." *Id.* ¶ 21. Plaintiff felt that "she had no other options and in light of the fact that Wells Fargo did not postpone the foreclosure sale despite an apparently complete modification application having been submitted, Plaintiff was prompted to seek emergency bankruptcy relief by filing a Voluntary Chapter 7 Petition on August 17, 2015." *Id.* ¶ 22. By February 2016, Plaintiff still had not received a determination on her July 2015 modification application from Wells Fargo. *Id.* ¶ 23. Plaintiff applied for a new modification. *Id.*

Beginning in August 2015, Wells Fargo began making "overinflated debt collection demands in connection with its collection of the debt owed to Defendant HSBC Bank." *Id.* ¶ 66. Additionally, in August 2015 the value of Plaintiff's Property was approximately $850,000 while the amount owed to HSBC totaled $997,363. *Id.* ¶ 67. In September 2016, the value of the Property remained at approximately $850,000, while the amount of unpaid principal on HSBC's debt totaled $918,982.01. *Id.* ¶ 68. HSBC Bank indicated that the amount owed on the loan as of September 2016 was $1,078,801.68, which included $918,982.01 in principal; $120,841.09 in accrued interest; and $2,593 in fees. *Id.* This amounted to a difference of over $80,000 between the amount Plaintiff allegedly owed in 2015 and 2016. *Id.* Plaintiff alleges the September 2016 balance statement from Wells Fargo is inflated and constitutes "an improper demand" from Wells Fargo with regard to the amount owed on the loan owed to HSBC Bank. *Id.* ¶ 69.

On November 21, 2016, Wells Fargo received Plaintiff's documentation requesting mortgage payment assistance and asked Plaintiff to contact Wells Fargo to determine which options were available to her. *Id.* ¶ 29. On November 30, 2016, Plaintiff received correspondence from Wells Fargo indicating that she had been denied a Home Affordable Modification Program ("HAMP") loan modification because the current unpaid principal balance of Plaintiff's loan was higher than the program limit. *Id.* ¶ 30.

Plaintiff was "shocked by this information" because communications from Wells Fargo's representatives "consistently gave the impression" that her loan had remained the same since 2012 and that she could qualify for the loan modification despite having received a prior modification. *Id.* ¶ 56. Because of Wells Fargo's actions, the Property was slated to sell at a foreclosure sale in February 2017. *Id.* ¶¶ 57-58. On February 21, 2017, the Superior Court of California for the County of Alameda granted Plaintiff's ex parte application for a Temporary Restraining Order to enjoin the foreclosure sale. Not. of Removal, Ex. B at p. 237 (order granting ex parte appl.), Dkt. No. 1.

The FAC asserts seven causes of action: (1) Negligence; (2) two claims of Violation of the Rosenthal Act, Cal. Civil Code § 1788.17; (3) Predatory Lending in Violation of California Financial Code §§ 4970-4979.8; (4) Fraud by Concealment; and (5) two claims of Unfair

3

1  Competition in Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

2  Code § 17200 *et seq.*

3       Plaintiff initiated this action on February 16, 2017.  *See* Not. of Removal, Ex. A (Compl.).

4  She filed her FAC on May 5, 2017.  *See* FAC.  Defendants filed the instant Motion on May 19,

5  2017.

6  **LEGAL STANDARD**

7       Rule 8(a) requires that a complaint contain a "short and plain statement of the claim

8  showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint must therefore

9  provide a defendant with "fair notice" of the claims against it and the grounds for relief.  *Bell Atl.*

10  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

11       A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough

12  facts to state a claim to relief that is plausible on its face.  *Id.* at 570.  "A claim has facial

13  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

14  inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662,

15  678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

16  more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550

17  U.S. at 557).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

18  detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

19  relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

20  cause of action will not do.  Factual allegations must be enough to raise a right to relief above the

21  speculative level."  *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

22       In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as

23  true and construe them in the light most favorable to the plaintiff.  *Id.* at 550; *Erickson v. Pardus*,

24  551 U.S. 89, 93-94 (2007); *Vasquez v. L.A. Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  In addition,

25  courts may consider documents attached to the complaint.  *Parks Sch. of Bus., Inc. v. Symington*,

26  51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

27       If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no

28  request to amend the pleading was made, unless it determines that the pleading could not possibly

be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotations and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## REQUEST FOR JUDICIAL NOTICE

As a preliminary matter, Defendants request the Court take judicial notice of the following documents: (1) Initial Interest Note, dated April 2, 2007 and signed by Plaintiff (RJN, Ex. A); (2) Deed of Trust, dated April 2, 2007 and recorded in the official records of the Office of the Alameda County Recorder on April 9, 2007 as Document No. 2007135524 (*id.*, Ex. B); (3) Corporate Assignment of Deed of Trust, dated February 9, 2012 and recorded in the official records of the Office of the Alameda County Recorder on February 22, 2012 as Document No. 2012058554 (*id.*, Ex. C); (4) Modification Agreement dated April 30, 2012 and signed by Plaintiff (*id.*, Ex. D); (5) Substitution of Trustee, dated September 5, 2014 and recorded in the official records of the Office of Alameda County Recorder on September 15, 2014 as Document No. 2014225541 (*id.*, Ex. E); (6) Notice of Default and Election to Sell Under Deed of Trust, dated December 18, 2014 and recorded in the official records of the Office of Alameda County Recorder on December 22, 2014 as Document No. 2014311035 (*id.*, Ex. F); (7) Notice of Trustee's Sale, recorded in the official records of the Office of the Alameda County Recorder on November 18, 2016 as Document No. 2016302150 (*id.*, Ex. G); (8) *Bankruptcy Docket* relating to Plaintiff's Chapter 7 bankruptcy filed on August 17, 2015, United States Bankruptcy Court, Northern District of California, Oakland Division, Case No. 15-42533 (*id.*, Ex. H); and (9) *Order Granting Motion for Relief from Automatic Stay* entered on October 20, 2016, United States Bankruptcy Court, Northern District of California, Oakland Division, Case No. 15-42533 (*id.*, Ex. I).

In ruling upon a motion to dismiss, the Court may consider only the allegations in the complaint, any exhibits thereto, and matters which may be properly subject to judicial notice. *See*

1    *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030-31 (9th Cir. 2008).  Federal

2    Rule of Evidence 201(b)(2) allows a court to take judicial notice of "a fact that is not subject to

3    reasonable dispute because it can be accurately and readily determined from sources whose

4    accuracy cannot reasonably be questioned."  Documents publicly recorded by a County Record's

5    Office are public records that are properly subject to judicial notice.  *See Stromberg v. Ocwen*

6    *Loan Servicing, LLC*, 2017 WL 2686540, at *3 (N.D. Cal. June 22, 2017) (taking judicial notice of

7    a number of documents that were publicly recorded by the Santa Clara County Record's Office).

8    Exhibits B, C, E, F, and G are documents that were recorded in the official records of the Office of

9    the Alameda County Recorder; therefore, the Court GRANTS Defendants' request to take judicial

10   notice of these Exhibits.

11          The Court may also take judicial notice of court filings.  *Reyn's Pasta Bella, LLC v. Visa*

12   *USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (finding it appropriate to take judicial notice of

13   court filings and other matters of public record such as pleadings in related litigation); *Headwaters*

14   *Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (courts may take judicial notice

15   of the docket in related cases).  Accordingly, the Court GRANTS Defendants' request to take

16   judicial notice of Exhibits H and I because they are public court filings.

17          Finally, the Court analyzes Exhibits A and D under the incorporation by reference

18   doctrine, which allows the Court to take judicial notice of "materials where 'the plaintiff's claim

19   depends on the contents of a document, the defendant attaches the document to its motion to

20   dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff

21   does not explicitly allege the contents of that document in the complaint.'"  *Morton v. Wells Fargo*

22   *Bank, N.A.*, 2016 WL 7117041, at *2 (N.D. Cal. Dec. 7, 2016) (quoting *Hendricks v. Wells Fargo*

23   *Bank, N.A.*, 2015 WL 1644028, at *1 (C.D. Cal. Apr. 14, 2015)).  Exhibit A is the Initial Interest

24   Note, which includes, among other things, Plaintiff's signature indicating that she is entering into

25   an initial agreement with Defendants, and Plaintiff's date and location upon signature.  Exhibit D

26   is the Modification Agreement, which includes, among other things, the date of the modification,

27   the parties to the modification, the amount payable, and the Property at issue.  As Plaintiff's

28   claims depend on the contents of both of these documents, and as she does not dispute the

authenticity of these documents, the Court GRANTS Defendants' request.

## DISCUSSION

Defendants assert that each of Plaintiff's seven claims should be dismissed for failure to state a claim pursuant to Rule 8, Rule 9(b), and Rule 12(b)(6). Mot. at 2. The Court analyzes the sufficiency of each claim below.

**A.  Negligence**

To assert a claim for negligence, a plaintiff must allege that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the duty of care, and (3) the breach was the proximate cause of (4) the plaintiff's injuries or damages. *See Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001). "Whether a duty of care exists is a question of law to be determined on a case-by-case basis." *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013).

Plaintiff alleges Wells Fargo was negligent in its "fail[ure] to maintain policies and procedures designed to provide a borrower with accurate information, following a borrower's request for information about the loss mitigation options available to a borrower." FAC ¶ 54. Wells Fargo argues a duty of care does not exist between a lender and borrower in the servicing of a loan or the handling of a loan modification application. Mot. at 8. Wells Fargo also argues that liability for negligence arises only when the lender acts outside of its "conventional role" as a money lender and that a loan modification is merely the renegotiation of loan terms, "which falls squarely within the scope of a lender institution's conventional role." *Id.* at 7-8.

1.  <u>Duty</u>

"As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991). However, "*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower." *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 901 (2013) (internal quotation marks and citation omitted). "Even when the lender is acting as a conventional lender, the no-duty rule is only a general rule." *Id.* Instead, "the . . . question of whether a lender owes such a duty requires the balancing of the *Biakanja* factors." *Id.* (internal

quotation marks omitted); *see Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958). Those six factors are:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Nymark*, 231 Cal. App. 3d at 1098 (quoting *Biakanja*, 49 Cal. 2d at 650).

California courts are split as to whether a lender owes a duty of care to a borrower in connection with a residential loan modification. *See, e.g.*, *Lueras*, 221 Cal. App. 4th at 67 (holding that a lender does not owe a borrower a common law duty "to offer, consider or approve" a loan modification); *Jolley*, 213 Cal. App. 4th at 906 (in a construction loan context, the court concluded it was error when the trial court determined Chase did not owe a duty to the borrower); *Benson v. Ocwen Loan Servicing, LLC*, 562 F. App'x 567, 570 (9th Cir. 2014) (relying on *Lueras* to find "[t]he duty of care imposed on construction lenders . . . does not apply in the residential loan context." (citation omitted)); *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 944-49 (2014) (finding the defendants owed a duty to exercise reasonable care reviewing loan modification applications once the defendants agreed to consider the application). The split also exists in courts in this district. *See Faulks v. Wells Fargo & Co.*, 231 F. Supp. 3d 387, 408 (N.D. Cal. 2017) (acknowledging the split); *Aquino v. U.S. Bank Nat'l Ass'n*, 2016 WL 3078841, at *4 (N.D. Cal. Apr. 26, 2016) (collecting cases); *MacDonald v. Wells Fargo Bank, N.A.*, 2015 WL 1886000, at *5 (N.D. Cal. Apr. 24, 2015) (same); *Rijhwani v. Wells Fargo Home Mortg., Inc.*, 2014 WL 890016, at *15-17 (N.D. Cal. Mar. 3, 2014) (same). Neither the Ninth Circuit nor the California Supreme Court has addressed the issue.

Wells Fargo argues *Alvarez* and *Jolley* ignore the purpose and scope of the California Supreme Court's instruction in *Biakanja* that "[t]he determination whether in a specific case the defendant will be held liable to a third person not in privity" involves the balancing of six factors.

8

49 Cal. 2d at 650;[1] Reply at 4.  Consequently, Wells Fargo contends the *Biakanja* factors should not be considered in a traditional lender-borrower relationship where there is privity of contract between parties and where the bank's involvement does not exceed the scope of a conventional lender.  *Id.*

But courts still apply the *Biakanja* factors to determine whether a financial institution owes a duty of care to a borrower-client, even where the parties are in privity.  The California Supreme Court in *J'Aire Corporation v. Gregory* relied on *Biakanja*'s theory of negligence, holding that "[w]here a special relationship exists between the parties, a plaintiff may recover for loss of expected economic advantage through the negligent performance of a contract although the parties were not in contractual privity."  24 Cal. 3d 799, 804 (1979). Courts have expanded the application of *J'Aire*, and in turn *Biakanja*, to occasions where the parties are in privity.  *See Aas v. Superior Court*, 24 Cal. 4th 627, 645 (2000) ("While the court in *J'Aire* purported only to address duties owed to persons not in contractual privity with the defendant, courts subsequently

---

[1] Wells Fargo relies on *Carbajal v. Wells Fargo Bank, N.A.*, 2015 WL 2454054, at *4-7 (C.D. Apr. 10, 2015), to show that the recent body of cases that assign a duty of care in the loan servicing context appear to misinterpret *Nymark* and *Biakanja* in a way that imposes a pre-determined conclusion.  Reply at 4.  *Carbajal* is not binding on this Court.  Moreover, this Court has acknowledged that

> Judge Laurel Beeler pointed out a flaw in *Carbajal*'s reasoning in its criticisms of courts following *Alvarez*.  *See Rijhwani v. Wells Fargo Home Mortg., Inc.*, 2015 WL 3466608, at *22 n.7 (N.D. Cal. May 30, 2015).  Specifically, the *Carbajal* court noted that those courts following *Alvarez* utilized the *Biakanja* factors, but suggested those factors are inapplicable in the loan modification context because they were devised to determine whether a duty of care exists between parties who are not in privity to one another.  *Carbajal*, 2015 WL 2454054, at *6.  However, as Judge Beeler noted, "[w]hile it is true that the *Biakanja* factors originally were used in the no-privity context, California appellate courts nevertheless have expanded the use of those factors to contexts where there is privity, such as between lenders and borrowers."  *Rijhwani*, 2015 WL 3466608, at *22 (citing *Nymark*, 231 Cal. App. 3d at 1098 and *Alvarez*, 228 Cal. App. 4th at 948-49). . . .  Consequently, it is reasonable that the California Court will continue to support the California Court of Appeal decisions applying the *Biakanja* factors in this context, and the Court declines to follow *Carbajal* in rejecting *Alvarez* and its progeny.

*Powell v. Wells Fargo Home Mortg.*, 2016 WL 1718189, at *16 n.19 (N.D. Cal. Apr. 29, 2016).

have applied *J'Aire* to cases in which privity did exist. These courts have concluded that the reasoning of *J'Aire* is wholly incompatible with a limitation of the cause of action to those instances in which the plaintiff and defendant are not in privity[.]" (internal quotation marks and citation omitted)). The *Aas* Court did not approve nor disapprove of this expansion. *See id.*; *see also R Power Biofuels, LLC v. Chemex, LLC*, 2016 WL 6663002, at *6 (N.D. Cal. Nov. 11, 2016) ("In the course of its analysis, the *Aas* Court noted that lower courts had expanded . . . *Biakanja* to circumstances where the parties were in privity, but did not approve or disapprove of that expansion."). Even if *Alvarez* did not explicitly state whether parties where in privity, and *Jolley* acknowledged the plaintiff was "the person in direct negotiation, and contractual privity, with the loan originator (WaMu), from which Chase took over," both courts applied the *Biakanja* factors to determine whether the lender owed a duty of care to the borrower. *See Alvarez*, 228 Cal. App. 4th at 948-49; *Jolley*, 213 Cal. App. 4th at 900. Thus, the Court agrees with the extension of *Biakanja* to foreclosure cases where the parties are in privity.

Plaintiff alleges Wells Fargo owed her a duty of care in reviewing her loan modification application. FAC ¶ 55. This is analogous to the duty of care argument in *Alvarez*. The Court therefore rejects Wells Fargo's contention that they did not, as a matter of law, owe a duty of care to Plaintiff. Mot. at 7; *see Alvarez*, 228 Cal. App. 4th at 944.

Accordingly, the Court applies the *Biakanja* factors to determine whether Wells Fargo exceeded its role as a money lender and thus owed Plaintiff a duty of care. The Court finds a majority of the *Biakanja* factors weigh in favor of finding a duty. First, the loan modification was intended to affect Plaintiff: had she obtained a loan modification, it would have reduced her mortgage payment and allowed her to keep her home from going into foreclosure. Second, the harm from mishandling the documents – i.e., failing to give Plaintiff a decision about her first modification request and/or drawing out the modification process past the foreclosure deadline – was foreseeable, and Wells Fargo's mishandling and/or delayed decision stymied Plaintiff's efforts to avoid foreclosure. Third, the injury was certain to occur: without obtaining a modification or being told she should attempt to find relief through another lender, Plaintiff's Property would go into foreclosure. Fourth, months of alleged correspondence between Plaintiff

10

and Wells Fargo after Plaintiff applied for a loan in the summer of 2015 (*see* FAC ¶¶ 55-58) indicate a close connection between Wells Fargo's conduct and Plaintiff's injury. Fifth, the showing of continued correspondence between Plaintiff and Wells Fargo shows, at a minimum, some moral blame attached to Wells Fargo's conduct. Sixth, the public policy of preventing future harm – i.e., ensuring lenders provide borrowers seeking modification with accurate and timely information to avoid foreclosure – is evident, as Plaintiff filed bankruptcy and her Property was scheduled to sell at foreclosure sale on February 27, 2017. *See id.* ¶¶ 115-16; *see also Rijhwani*, 2014 WL 890016, at *17; *Powell*, 2016 WL 1718189, at *17 (citing *Garcia v. Ocwen Loan Servicing, LLC*, 2010 WL 1881098, at *3 (N.D. Cal. May 10, 2010) ("The existence of a public policy of preventing future harm to home loan borrowers is shown by recent actions taken by both the state and federal government to help homeowners caught in the home foreclosure crisis.")).

Taking Plaintiff's allegations as true, the Court concludes at this point that all six *Biakanja* factors weigh in favor of finding Wells Fargo's role went beyond that of a "conventional" lender; and thus, Wells Fargo owed Plaintiff a duty of care in processing her loan modification applications.

### 2. Breach

Having found Plaintiff sufficiently alleges facts showing Wells Fargo owed her a duty of care, the Court next considers whether Wells Fargo breached that duty. Plaintiff alleges "Defendant's actions demonstrate that it failed to maintain policies and procedures designed to provide a borrower with accurate information, following a borrower's request for information about the loss mitigation options available to a borrower." FAC ¶ 54.

A lender breaches its legal duty to borrowers where the lender does more than deny a loan modification request; for example, where the lender "mishandled documents or engaged in some other form of misconduct." *Aquino*, 2016 WL 3078841, at *5; *see Greene v. Wells Fargo Bank, N.A.*, 2015 WL 4571545, at *4 (N.D. Cal. July 28, 2015) ("[I]n cases finding a legal duty, the defendants mishandled documents, or otherwise alleged misconduct beyond a procedural violation of the Homeowner's Bill of Rights" (collecting cases)); *MacDonald*, 2015 WL 1886000, at *6

("Having agreed to consider Plaintiff for a loan modification, Wells Fargo was required to process that application with ordinary care.").

Plaintiff details a long and confusing course of dealing with Wells Fargo personnel over several years, during which she attempted to obtain a loan modification. *See id.* ¶¶ 12-31. On November 30, 2016, Wells Fargo informed Plaintiff that her request for modification had been denied (*id.* ¶ 30) because the current unpaid principal balance of Plaintiff's loan was higher than the program limit and she had received the maximum number of modifications allowed under investor guidelines (*id.* ¶ 55). Plaintiff was "shocked by this information" because communications from Wells Fargo's representatives "consistently gave the impression" that her loan had remained the same since 2012 and that Plaintiff could qualify for the loan modification despite a prior modification. *Id.* ¶ 56. As a result of Wells Fargo's actions, Plaintiff's Property was scheduled to sell at a foreclosure sale in February 2017. *Id.* ¶¶ 57-58.

The FAC alleges more than a simple denial of a loan modification request; it alleges Wells Fargo engaged in "some other form of misconduct." *See Aquino*, 2016 WL 3078841, at *5 ("In cases where courts have found a plaintiff stated a claim for negligence, the allegations showed that a defendant did more than deny a request to modify a loan. Rather, the plaintiffs alleged that defendants mishandled documents or engaged in some other form of misconduct."). Specifically, Wells Fargo never resolved Plaintiff's initial loan modification application; sent her confusing, inaccurate information; and misled her by giving her the impression she could qualify for a prior loan modification. FAC ¶¶ 12-56. "[A] lender does owe a duty to a borrower to not make material misrepresentations about the status of an application for a loan modification or about the date, time, or status of a foreclosure sale. The law imposes a duty not to make negligent misrepresentations of fact." *Lueras*, 221 Cal. App. 4th at 68. Plaintiff therefore sufficiently alleges Wells Fargo breached its duty of care.

### 3. Causation

In order to state a negligence claim, Plaintiff must allege Wells Fargo's breach proximately caused her damages. *Greene*, 2015 WL 4571545, at *4 (citing *Lueras*, 221 Cal. App. 4th at 62). Courts have dismissed negligence claims where there is an absence of facts sufficient to show that

a defendant's alleged misconduct caused the plaintiff to foreclose or suffer other damages. *See Greene*, 2015 WL 4571545, at *4 (dismissing negligence claim where the plaintiff failed to allege any damages caused by the defendant's breach of its legal duty); *Garcia v. PNC Mortg.*, 2015 WL 534395, *10 (N.D. Cal. Feb. 9, 2015) (dismissing negligence claim where the plaintiff did not allege any "facts showing that, but for the alleged negligence, plaintiff would have obtained a loan modification or otherwise have been able to avoid foreclosure.").

Plaintiff fails to allege facts showing that Wells Fargo's conduct caused her injuries. The FAC alleges that "despite Plaintiff's ongoing efforts and the fact that Defendant withheld from Plaintiff the fact that her loan could never be modified, Plaintiff's property is scheduled to sell at foreclosure sale on February 27, 2017." FAC ¶ 57. It further alleges that Plaintiff suffered damages "as a result of Defendant's conduct." *Id.* ¶ 58. These conclusory allegations are unsupported by facts that there was a reasonable likelihood that Wells Fargo would have approved her modification request but for its misconduct. On the contrary, Plaintiff alleges she was not likely to be approved for this modification because of her loan balance and prior modifications. *Id.* ¶¶ 55-56. Plaintiff does not allege Wells Fargo's conduct prevented her from obtaining relief (e.g., a refinance) from another source. *See Greene*, 2015 WL 4571545, at *4 (plaintiff failed to plead sufficient facts that defendant's breach of duty caused damages where plaintiff conclusorily alleged she "was deprived of the opportunity to seek relief elsewhere").

Because Plaintiff fails to allege facts that Wells Fargo caused her injuries, the Court DISMISSES the negligence claim. Because Plaintiff may possess facts showing her damages were proximately caused by Wells Fargo, the dismissal shall be with leave to amend so she may allege such facts.

## B. Violations of California Civil Code § 1788.17

Plaintiff's second and third causes of action allege Defendants violated the Rosenthal Act, Cal. Civ. Code § 1788.17. FAC ¶¶ 61-89. Her second cause of action is based on Wells Fargo's conduct related to the September 2016 balance statement, that is, providing an allegedly inflated balance statement which constitutes an improper demand from Wells Fargo with regard to the amount owed on the loan to HSBC. *Id.* ¶¶ 60-74. Her third cause of action is predicated on Wells

Fargo's allegedly improper attempts to collect interest and fees despite Plaintiff's contention that her Property was underwater and the loan at issue was unsecured or under secured. *Id.* ¶¶ 75-89. Plaintiff bases her Rosenthal Act claims on Defendants' violation of both the FDCPA and 11 U.S.C. § 506(b). *See id.* ¶¶ 61-65, 76-86. She alleges Wells Fargo is a debt collector and HSBC is liable as principal for Wells Fargo's improper debt collection activity. *See id.* ¶¶ 73, 87.

The purpose of the Rosenthal Act is "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1(b). It therefore requires that "every debt collector collecting or attempting to collect a consumer debt" comply with the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C §§ 1692b-1692j. Cal. Civ. Code § 1788.17. A "debt" is "money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person." Cal. Civ. Code § 1788.2(d).

Plaintiff's Rosenthal Act claims fail. First, Wells Fargo is not a "debt collector" under the FDCPA. The FDCPA's definition of a "debt collector" does not include a creditor collecting its own debt. *See Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 970 (9th Cir. 2017) ("[S]ecurity interest enforcers are not debt collectors for purposes of the entire FDCPA" except for 15 U.S.C. § 1692f(6)[2]). Plaintiff does not base her Rosenthal Act claim on a violation of § 1692f(6).[3]

---

[2] Section 1692f(6) of the FDCPA prohibits

> [t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
> (B) there is no present intention to take possession of the property; or
> (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6).

[3] At most, that subsection is included in the range of FDCPA sections Plaintiff generally references in the FAC. *See* FAC ¶ 61 (general reference to § 1692b through § 1692j); *id.* ¶ 63 (asserting that under Civil Code § 1788.17, "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive. . . ."). These references are unsupported by any factual allegations and insufficient to state a claim for a § 1692(f)(6) violation.

Nevertheless, the Supreme Court recently clarified the FDCPA

> defines debt collectors to include those who regularly seek to collect debts 'owed . . . another.' And by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself. Neither does this language appear to suggest that we should care how a debt owner came to be a debt owner—whether the owner originated the debt or came by it only through a later purchase. All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for "another."

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017).

Plaintiff alleges HSBC is the current owner of the loan as trustee for Wells Fargo Asset Securities Corporation (FAC ¶ 5), and Wells Fargo is the current servicer of the loan on behalf of HSBC (*id.* ¶ 4). Since HSBC is alleged to have an interest in the Property and is only collecting the debt that it is owed, it is therefore not a "debt collector" for purposes of the FCPCA. As a loan servicer, Wells Fargo also is not a "debt collector" under § 1692a(6) of the FDCPA. *See, e.g.*, *Ho v. ReconTrust Co., N.A.*, 858 F.3d 568, 573 (9th Cir. 2016) (trustee of a deed of trust was not a debt collector under the FDCPA because "an entity does not become a 'debt collector' if its 'only role in the debt collection process is the enforcement of a security interest.'" (citations omitted)); *Mary Juliet Ng v. U.S. Bank Tr., NA, et al.*, 2016 WL 3017648, at \*4 (N.D. Cal. May 26, 2016) ("A mortgage servicer or the assignee of a debt is not a 'debt collector' under the FDCPA." (citing cases)); *Pratap v. Wells Fargo Bank, N.A.*, 63 F. Supp. 3d 1101, 1113-14 (N.D. Cal. 2014) (dismissing FDCPA claim with prejudice because neither mortgage company, assignee of debt, nor mortgage servicing company were debt collectors within the meaning of the FDCPA). The FDCPA, and by extension the Rosenthal Act for the purposes of this claim, do not apply to Defendants.[4]

---

[4] The Rosenthal Act defines a debt collector as

> any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. The term includes any person who composes and sells, or offers to compose and sell, forms letters, and other collection media used or intended to be used for debt collection, but does not include an attorney or counselor at law.

1.    Second Cause of Action

The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including the false misrepresentation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Plaintiff alleges Wells Fargo is a debt collector because "in the regular course of business, it engages in debt collection activity on behalf of itself and others" and because "[it] regularly collect[s] or attempt[s] to collect debts owed or due or asserted to be owed or due to another." FAC ¶¶ 62, 65. Plaintiff argues the September 2016 balance statement from Wells Fargo is inflated and constitutes "an improper demand" from Wells Fargo with regard to the amount owed on the loan owed to HSBC Bank. *Id.* ¶ 69. As such, Wells Fargo's demand for the inflated balance on the loan in September 2016 is "false, deceptive, and misleading representation" regarding the amount of the loan. *Id.* ¶ 70. As a result of Wells Fargo's conduct, Plaintiff claims she "suffered, and continues to suffer various injuries, including an inflated loan balance demanded by Defendant[.]" *Id.* ¶ 72. Because Wells Fargo made collection demands on behalf of HSBC, HSBC is liable as a principal for Wells Fargo's improper debt collection activity. *Id.* ¶ 73.

Defendants argue Plaintiff's conclusory allegations fail to allege specific facts in support of her claims. Mot. at 11. The Court agrees. Plaintiff alleges the outstanding loan balance as of September 2016 with specificity (FAC ¶ 68), but fails to allege facts sufficient to show the stated balance did not accurately reflect what was owed on the loan at that particular point in time. The fact that the balance exceeds the value of the Property does not, in and of itself, establish the loan

---

Cal. Civ. Code § 1788.2. This definition is "broader than that contained in the FDCPA." *Fitzgerald v. Bosco Credit, LLC*, 2016 WL 3844333, at *8 (N.D. Cal. July 15, 2016) (citing *Barria v. Wells Fargo Bank, N.A.*, 2016 WL 474319, at *6 (E.D. Cal. Feb. 8, 2016)). "[A] mortgage servicer may be a 'debt collector' under the Rosenthal Act even if it is the original lender, whereas, such an entity would be excluded from the definition of debt collector under the federal act." *Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759, at *19 (N.D. Cal. Jan. 3, 2011). As noted, Plaintiff premises her cause of action on a violation of California Civil Code § 1788 which requires a debt collector to comply with the provisions of 15 U.S.C. §§ 1692b-1692j. FAC ¶¶ 61, 63. Such a violation does not apply to either HSBC or Wells Fargo because they are not "debt collectors" under the statute.

balance is overinflated. Nor does the fact that the amount owed increased by "over $80,000 over the course of approximately one year." *Id.* Plaintiff does not identify what false misrepresentations Wells Fargo made regarding "the character, amount, or legal status of any debt" or when Wells Fargo made them. *See* 15 U.S.C. § 1692e(2)(A). This is insufficient to state a claim: it does not give Defendants notice of what conduct was wrongful nor when the purported conduct took place.

### 2. Third Cause of Action

As discussed above, Defendants are not debt collectors under the FDCPA at issue in the FAC. Plaintiff therefore cannot predicate her Rosenthal Act claim on an FDCPA violation, and her third cause of action therefore fails on this ground.

But Plaintiff also alleges Defendants charged interest on the loan in violation of § 506(b) of the Bankruptcy Code. FAC ¶ 86. This, Plaintiff contends, violates the FDCPA, which prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Plaintiff alleges that this in turn constitutes a violation of the Rosenthal Act. *See* FAC ¶ 89.

Defendants argue that 11 U.S.C. § 506(b) applies only to "allowed . . . claims," which Wells Fargo does not possess. Mot. at 14-15. As such, Defendants contend that they did not violate bankruptcy law and therefore did not violate the FDCPA or the Rosenthal Act. *Id.* at 16. The Court agrees. Section 506(b) does not apply here because there is no allowed claim. *See Fitzgerald*, 2016 WL 5791253, at *5. In order to participate in the distribution of a bankrupt estate's assets, a creditor must file a proof of claim and then have the claim allowed. *See, e.g.*, *HSBC Bank USA, N.A. v. Blendheim (In re Blendheim)*, 803 F.3d 477, 484-85 (9th Cir. 2015). Creditors, however, may decline to file a proof of claim and may choose to "ignore the bankruptcy proceedings" and instead "secure the in rem right that the lien guarantees him under non-bankruptcy law: the right of foreclosures." *Id.* at 485. Plaintiff does not allege the existence of an allowed secured claim. On the contrary, the RJN suggests otherwise: Defendants did not file a

proof of claim during Plaintiff's Chapter 7 bankruptcy case (*see* RJN, Ex. H); instead they sought relief from the automatic bankruptcy stay (*id.*, Ex. I). These actions indicate Defendants pursued their remedies outside of, rather than within, the bankruptcy case.

Plaintiff contends "because (1) it is immaterial that Defendants did not file a proof of claim and (2) this allegation involves post petition amounts and, regardless of whether Defendants filed a claim, they are subject to the bankruptcy code regarding post petition monies." Opp'n at 14. However, Defendants' liens passed through bankruptcy unaffected. *See Dewsnup v. Timm*, 502 U.S. 410, 418 (1992); *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("A bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."); *Shook v. CBIC*, 278 B.R. 815, 821 (B.A.P. 9th Cir. 2002) (acknowledging the "longstanding principle that a secured creditor may bypass a debtor's bankruptcy proceedings and enforce its lien in the usual way, because unchallenged liens pass through bankruptcy unaffected." (citing *Long v. Bullard*, 117 U.S. 617, 620-21 (1886))). Absent allegations that Defendants have an allowed claim, any failure to follow § 506(b) does not state a violation of the Bankruptcy Code.

Plaintiff's third cause of action also fails to the extent it uses 11 U.S.C. § 506(b) as a predicate violation.[5] The Ninth Circuit has rejected attempts to use the FDCPA as a remedy for a Bankruptcy code violation. *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510-11 (9th Cir. 2002). In *Walls*, the plaintiff alleged the lender "engaged in unfair and unconscionable collection practices, which are forbidden by the FDCPA, by trying to collect her debt in violation of the discharge injunction" she received in a bankruptcy proceeding. *Id.* at 510. Recognizing "that [the plaintiff's] FDCPA claim [was] based on an alleged violation of [11 U.S.C.] § 524," the Ninth Circuit held that "[w]hile the FDCPA's purpose is to avoid bankruptcy, if bankruptcy nevertheless occurs, the debtor's protection and remedy remain under the Bankruptcy Code." *Id.* The court was not persuaded that "Congress intended to allow debtors to bypass the [Bankruptcy] Code's

---

[5] Section 506(b) states that "[t]o the extent that an allowed secure claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statue under which such claim arose." 11 U.S.C. § 506(b).

remedial scheme when it enacted the FDCPA." *Id.* at 511 ("Nothing in either Act persuades us that Congress intended to allow debtors to bypass the Code's remedial scheme when it enacted the FDCPA."). The Ninth Circuit "agree[d] with the Sixth Circuit's view in *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000), that it is not up to [the courts] to read other remedies into the carefully articulated set of rights and remedies set out in the Bankruptcy Code." *Id.* Because the plaintiff's "remedy for violation of § 524 no matter how cast lie[d] in the Bankruptcy Code, her simultaneous FDCPA claim [was] precluded." *Id.*

Moreover, this Court has held that a plaintiff could not seek relief from a § 506(b) violation through means outside of the Bankruptcy Code. *See Grossi v. Bosco Credit, LLC*, 2017 WL 3453347, at *13 (N.D. Cal. Aug. 10, 2017). While the Ninth Circuit has not yet addressed whether the Bankruptcy Code provides the sole remedy for a § 506(b) violation, the Third Circuit has relied on *Walls* to hold that the "lone remedy [for a § 506(b) violation] is a contempt proceeding pursuant to § 105(a) in bankruptcy court." *In re Joubert*, 411 F.3d 452, 455 (3d Cir. 2005).

Nothing in *Walls* suggests its holding is limited only to § 524. While Plaintiff's third cause of action is based on 11 U.S.C. § 506(b), and the plaintiff in *Walls* based her claim on a different section, the *Walls* analysis is applicable to the present case, as 11 U.S.C. § 105, the remedial scheme at issue in *Walls*, also applies to § 506(b). *See* 11 U.S.C. § 103 ("[C]hapters 1, 3, and 5 of this title apply in a case under chapter 7 . . . of this title[.]"); FAC ¶ 81 (alleging Plaintiff filed Chapter 7 bankruptcy). Thus, Plaintiff cannot premise her FDCPA claim on a violation of the Bankruptcy Code.

### 3. Summary

The Court therefore DISMISSES Plaintiff's Rosenthal Act claims. To the extent Plaintiff's Rosenthal Act claims are predicated on violations of the FCDPA or the Bankruptcy Code, the dismissal is without leave to amend. However, Plaintiff may amend these claims, provided she can allege facts that otherwise support a Rosenthal Act claim.

## C. California Financial Code §§ 4970-4979.8

Plaintiff alleges Wells Fargo engaged in predatory lending when it refinanced Plaintiff's

covered loan in 2006 and 2007 in violation of California Financial Code section 4970. FAC ¶¶ 90-107. Plaintiff alleges Wells Fargo refinanced these loans without her approval or her knowledge, and that she did not receive any cash from the transactions. *Id.* ¶¶ 98-101.

Plaintiff also alleges Wells Fargo violated California Financial Code section 4973(j) (*id.* ¶ 95), presumably based on the refinancing of the loans (*see id.* ¶¶ 98-101). This section provides that

> [a] person who originates a covered loan shall not refinance or arrange for the refinancing of a consumer loan such that the new loan is a covered loan that is made for the purpose of refinancing, debt consolidation or cash out, that does not result in an identifiable benefit to the consumer, considering the consumer's stated purpose for seeking the loan, fees, interest rates, finance charges, and points.

Cal. Fin. Code § 4973(j). By its terms, section 4973(j) applies to covered loans. A covered loan is

> a consumer loan in which the original principal balance of the loan does not exceed the most current conforming loan limit for a single-family first mortgage loan established by the Federal National Mortgage Association in the case of a mortgage or deed of trust, and where one of the following conditions are met:
>
> (1) For a mortgage or deed of trust, the annual percentage rate at consummation of the transaction will exceed by more than eight percentage points the yield on Treasury securities having comparable periods of maturity on the 15th day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor.
> (2) The total points and fees payable by the consumer at or before closing for a mortgage or deed of trust will exceed 6 percent of the total loan amount.

Cal. Fin. Code § 4970(b).

Plaintiff's predatory lending claim fails for two reasons. First, Plaintiff fails to provide a sufficient factual basis to state a claim for predatory lending. Notably, there are no facts that Plaintiff's April 2006 and 2007 loans are "covered loans" as defined by section 4970. Rather, Plaintiff merely asserts that "[t]hese loans are covered loans, as defined by California's anti-predatory loan statutes, [Cal.] Fin. C[ode] §§4970-4979.8." FAC ¶ 38. But she does not allege facts that explain why the loans are covered loans. For instance, there are not facts showing her April 2006 and 2007 loans had an "original principal balance" that "d[id] not exceed the most current conforming loan limit for a single-family first mortgage loan established by the Federal

National Mortgage Association in the case of a mortgage or deed of trust[.]" Cal. Fin. Code § 4970(b). Furthermore, the FAC does not allege that the "annual percentage rate at consummation of the transaction" exceeded the Treasury securities rate by more than eight percentage points, or that the total points and fees paid by the consumer at or before closing exceeded six percent of the total loan amount. *See* FAC; Cal. Fin. Code § 4970(b)(1). Without such facts, Plaintiff's allegations that the 2006 and 2007 loans were covered loans are conclusory.

Second, the statute of limitations bars Plaintiff's claim. Predatory lending claims are subject to a one-year statute of limitations. Cal. Civ. Proc. Code § 340; *see DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1128 (N.D. Cal. 2010) ("California Code of Civil Procedure § 340 provides a one-year limitation period for statutes such as §§ 4973 and 4979.6 that do not prescribe a different period."). Plaintiff filed suit on February 16, 2017—almost ten years after the 2007 loan was recorded, and more than a year after she first alleges she discovered the fraudulent loans in late 2015. To the extent Plaintiff's predatory lending claims are based on the 2007 loan and the previous 2006 loan, they are time-barred.

Plaintiff argues her claims are timely because she did not discover the wrongful conduct of "Defendants Wells Fargo and HSBC" until "late 2015." FAC ¶¶ 103-04. For equitable tolling to apply, Plaintiff "must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. Mere conclusory assertions that delay in discovery was reasonable are insufficient and will not enable the complaint to withstand" a motion to dismiss. *CAMSI IV v. Hunter Tech. Corp.*, 230 Cal. App. 3d 1525, 1536-37 (1991).[6] Plaintiff alleges that in or around late 2015, she "began researching the chain of title" for her loan and "learned of the 2006 and 2007 Deeds of Trust recorded against her Property" as a result of that research. *Id.* ¶ 103. While Plaintiff alleges the time and manner of her discovery, she does not allege any facts as to why she was unable to discover the basis for her

---

[6] "[F]ederal courts exercising diversity jurisdiction are to use state statutes of limitation." *Yeager v. Bowlin*, 495 F. App'x 780, 782 (9th Cir. 2012) (citing *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1306 (9th Cir. 1992)). Therefore, "[f]ederal courts must abide by a state's tolling rules, which are integrally related to statutes of limitations." *Id.* at 782 (citing *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011)).

claims within the discovery period.

Plaintiff also argues her claims are timely because she has pleaded a continuing harm. Opp'n at 7-8. Plaintiff argues that the commission of the last harm was in "late 2015, when Defendant increased her loan balance to nearly $1,000,000.00." *Id.* (citing FAC ¶ 41).[7] But even if Plaintiff has pleaded the "last harm" occurred in late 2015, her claim is still time-barred because she did not file suit until February 2017, well over a year later.

The Court accordingly DISMISSES Plaintiff's predatory lending claim with leave to amend provided Plaintiff can allege facts showing her loans were covered loans and that equitable tolling applies.

## D. Fraud by Concealment

Under California law, the elements of fraud are: (a) false misrepresentation; (b) knowledge of its falsity; (c) intent to defraud; (d) justifiable reliance; and (e) damages. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). A cause of action for fraud must be stated with particularity. *Id.* at 1104; Fed. R. Civ. P. 9(b). To meet Rule 9(b)'s heightened pleading standard, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106. An even higher burden is required of plaintiffs who assert fraud claims against corporations, as plaintiffs then "must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Lazar v. Superior Court*, 12 Cal. 4th 631, 645 (1996) (internal quotation marks omitted).

Plaintiff alleges "[t]he fact that Plaintiff would never qualify for the loan, was also

---

[7] "There are two main branches [of the continuing-wrong accrual principles], the continuing violation doctrine and the theory of continuous accrual." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1197 (2013). The continuing violation doctrine applies to "injuries [that] are the product of a series of small harms, any one of which may not be actionable on its own" and where "a wrongful course of conduct bec[omes] apparent only through the accumulation of a series of harms." *Id.* at 1197-98. The continuing violation does not apply where a "complaint identifies a series of discrete, independently actionable alleged wrongs." *Id.* at 1198. In contrast, "the continuous accrual doctrine applies whenever there is a continuing or recurring obligation." *Id.* at 1199. But "the theory of continuous accrual supports recovery only for damages arising from those breaches falling within the limitations period." *Id.*

United States District Court
Northern District of California

concealed by the months of correspondence between Defendant and Plaintiff and the continuous requests for documents and statements made by her single point of contact." *Id.* ¶ 112. Plaintiff contends she relied "on these omissions, believing she would qualify for a modification and save her home." *Id.* On the contrary, "Defendant's"[8] communications "consistently gave the impression" that she could qualify for a loan modification, "despite a prior loan modification and the fact that the investor of Plaintiff's loan has remained the same since 2012." *Id.* ¶ 114. Plaintiff's Property was scheduled to sell at foreclosure sale on February 27, 2017. *Id.* ¶ 115. As a result of an unspecified Defendant's allegedly fraudulent omissions, Plaintiff was forced to file bankruptcy and "faces the imminent loss of her property to foreclosure, credit damage, loss of money, expenditure of attorney's fees, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness and depression[.]" *Id.* ¶ 116.

The FAC fails to satisfy the heightened pleading requirements of Rule 9(b): it does not adequately allege Plaintiff relied on Defendants' actions. To show that a plaintiff relied on a fraudulent omission, a plaintiff may demonstrate "that 'had the omitted information been disclosed, [the plaintiff] would have been aware of it and behaved differently.'" *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 250-51 (2011) (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)). A plaintiff must allege facts stating actual reliance, which "occurs when a misrepresentation is 'an immediate cause of [a plaintiff's conduct]'. . . and when, absent such representation, 'he would not, in all reasonable probability, have entered into the contract or other transaction.'" *Conroy v. Regents of Univ. of Cal.*, 45 Cal. 4th 1244, 1256 (2009) (internal quotation marks and citations omitted).

Plaintiff also fails to meet the higher burden required by plaintiffs who assert fraud claims against corporations. *See Lazar*, 12 Cal. 4th at 645. Plaintiff provides names of the persons who made the allegedly fraudulent representations and their authority to speak as Wells Fargo representatives, as well as her SPOCs with respect to her loan modification application. FAC ¶¶

---

[8] Plaintiff fails to specify which Defendant engaged in what specific conduct. Based on earlier facts in the FAC and for purposes of this Order, the Court assumes that "Defendant's" is a reference to Wells Fargo.

23

15-19.  Plaintiff provides various dates for when she received correspondence from each representative or SPOC and when she spoke with any of them. *Id.* ¶¶ 15-21.  Plaintiff alleges "Defendant's" representative's communications "consistently gave her the impression" that Plaintiff could qualify for a loan modification. *Id.* ¶ 114.  However, Plaintiff fails to state with specificity that Defendant communicated something fraudulent to her. *See* FAC.  Plaintiff merely alleges that "Defendant concealed from Plaintiff the material fact that her loan could never be modified. . . . The fact that Plaintiff would never qualify for the loan, was also concealed by the months of correspondence between Defendant and Plaintiff and the continuous requests for documents and statements made by her single point of contact." *Id.* ¶ 112.  Plaintiff refers to correspondence which indicated Plaintiff was denied a HAMP modification because the current unpaid principal balance of her loan was higher than the program limit, and she could not receive a proprietary modification because she had already received the maximum number of modifications allowed under investor guidelines. *Id.* ¶ 113.  These conclusory allegations fail to comply with the higher burden imposed on plaintiffs who assert fraud claims against corporations.

Plaintiff conclusorily alleges she relied upon Defendants' alleged omission of the fact that her loan modification application would be denied and that she suffered damages as a result of "Defendant's" fraudulent omissions. *See id.* ¶¶ 112, 116.  Plaintiff does not provide facts that directly link her participation in the loan modification process to her alleged damages. Furthermore, the FAC does not sufficiently allege that she would have taken a different course of action had she known earlier that her loan modification application would be denied.[9]  *See Greene*, 2015 WL 4571545, at *4 (finding plaintiff conclusorily alleged that "she was deprived of the opportunity to seek relief elsewhere" and failed to allege facts that plaintiff could have obtained alternative relief or how the defendant's alleged misconduct prevented her from seeking that relief, but granting leave to amend to allege in good faith facts plaintiff incurred damages caused by the

---

[9] The Court already found Defendants owed Plaintiff a duty of care in processing her loan modification application. *See supra* at 11.  Since the Court found that all six *Biakanja* factors weighed in favor of finding Wells Fargo's role exceeded that of "conventional" lender, Defendants owed Plaintiff a duty to disclose material facts pertaining to her loan. *Id.*; *see Jolley*, 213 Cal. App. 4th at 901.

defendant's breach of duty). As such, Plaintiff's allegations are insufficient to demonstrate actual reliance. *See Graham v. Bank of Am., N.A.*, 226 Cal. App. 4th 594, 608 (2014) (plaintiff failed to allege a sufficient nexus between the alleged misrepresentations or concealment and his alleged economic harm).

Because Plaintiff fails to plead her fraud by concealment claim with particularity pursuant to Rule 9(b), and because the requisite elements of a fraud by concealment claim are not met, the Court DISMISSES Plaintiff's fraud by concealment claim.

**E.     UCL Claims**

Plaintiff's sixth and seventh causes of action assert violations of the UCL against both Defendants. FAC ¶¶ 119-38. To state a UCL claim, "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *Lippett v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (citing Cal. Bus. & Prof. Code § 17200).

As an initial matter, Plaintiff does not sufficiently allege standing under the UCL. A plaintiff seeking to bring a UCL claim must show she "suffered injury in fact" and "lost money or property" as the result of the unfair practice. *Johnson v. GlaxoSmithKline, Inc.*, 166 Cal. App. 4th 1497, 1513 (2008) (citing Cal. Bus. & Prof. Code § 17204). Under the fraud by concealment cause of action, Plaintiff alleges "Defendant's" conduct forced her to file bankruptcy and caused the imminent loss of the Property to foreclosure, credit damage, loss of money, expenditure of attorneys' fees, and emotional damages. FAC ¶ 116. But Plaintiff does not allege how Defendants' *UCL violations*—as opposed to the other conduct she identifies in the FAC—caused her to suffer an injury and lose money or property. For that reason, dismissal is appropriate.

**1.     Sixth Cause of Action**

Plaintiff alleges Defendants engaged in unlawful business practices by violating the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617. FAC ¶¶ 120-123. Plaintiff predicates her sixth cause of action on "Defendant's violations of Cal. Fin. Cod. §§ 4970-4979.8" and on "Defendants' improper debt collection practices[.]" *Id.* ¶¶ 126-27. She also alleges an unspecified "Defendant has failed to maintain policies and procedures reasonably

designed to provide accurate information related to Plaintiff's request for information pertaining to her mortgage loan" (*id.* ¶ 121), including what loss mitigation programs for which Plaintiff was qualified (*id.* ¶ 124).

The UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted). Plaintiff's sixth cause of action fails to the extent it is predicated on her negligence, fraudulent concealment, predatory lending, or Rosenthal Act claims, as the Court has dismissede those claims. To the extent her sixth cause of action is based on alleged RESPA violations, Plaintiff fails to allege facts sufficient to show Defendants violated RESPA. Plaintiff only alleges "Defendant has failed to maintain policies and procedures reasonably designed to provide accurate information related to Plaintiff's request for information pertaining to her mortgage loan." FAC ¶¶ 122. There are no facts showing how Defendants failed to maintain these policies and procedures in violation of RESPA. Therefore, Plaintiff fails to show Defendants engaged in unlawful business practices by violating RESPA.

2. <u>Seventh Cause of Action</u>

Plaintiff's seventh cause of action for unfair business practices is also based on a RESPA violation. FAC ¶¶ 134-36. Plaintiff alleges an unspecified Defendant engaged in an unfair business practice by failing to uphold its duty to provide accurate information to Plaintiff regarding loss mitigation options. *Id.* ¶¶ 135-37.

"A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Wash. Mut. Inc.*, 142 Cal. App. 4th 1457, 1473 (2006). As it pertains to the unfair prong, Plaintiff alleges "Defendant's entire course of conduct" is unfair "because it undermines a legislatively declared policy and the practices has an impact on victims which outweighs the reasons, justifications, and motives of the wrongdoer." FAC ¶ 133 (errors in original).

Specifically, Plaintiff alleges Defendants failed to uphold RESPA's servicing guidelines

26

(*id.* ¶ 134), and, despite RESPA's mandates, one "Defendant has failed to maintain policies and procedures reasonably designed to provide accurate information related to Plaintiff's request for information pertaining to her mortgage loan and, specifically, what loss mitigation programs she qualified for in order to save her property from foreclosure" (*id.* ¶ 136). Plaintiff inadequately attempts to incorporate Defendants' "entire course of conduct" without specifying what conduct is allegedly unfair. Not only does Plaintiff fail to specify which Defendant engaged in what specific conduct, but her allegation that Defendants "failed to maintain policies and procedures" required by RESPA is conclusory and unsupported by facts. Thus, Plaintiff fails to show Defendants engaged in unfair business practices by violating RESPA.

    3. <u>Summary</u>

The Court DISMISSES Plaintiff's UCL claims with leave to amend so Plaintiff may allege facts to show how Defendants violated RESPA.

<strong>CONCLUSION</strong>

For the reasons stated above, the Court GRANTS Defendants' Motion to Dismiss. To the extent Plaintiff's Rosenthal Act claims are based on violations of the FDCPA and the Bankruptcy Code, the dismissal is without leave to amend; in all other respects, the dismissal is with leave to amend. Plaintiff's amended complaint is due November 16, 2017.

**IT IS SO ORDERED.**

Dated: October 25, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge